# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

ALFRED MCZEAL, SR.                        CIVIL ACTION NO. 05-1080

VS.                                       JUDGE DOHERTY

SOUTHERN CONSUMERS                        MAGISTRATE JUDGE HILL
COOP, INC., ET AL.

## REPORT AND RECOMMENDATION

Pending before the court are two Motions for Partial Summary Judgment filed by

*pro se* plaintiff, Alfred McZeal, Sr. ("McZeal"). [rec. docs. 74[1] and 84[2] ].  By the latter

Motion, McZeal seeks summary judgment on his claims under ERISA for breach of

fiduciary duties, and negligence asserted under Louisiana state law, denominated as

claims one through five in plaintiff's Complaint. By the former Motion, McZeal seeks

imposition of a constructive trust and equitable lien under ERISA on assets he asserts

belong to his ERISA plan which have allegedly been unlawfully transferred as a result of

fiduciary breaches.  Defendants, Southern Consumer Cooperative, Inc. (SCC), the

People's Enterprises, Inc. (People's), Southern Development Foundation, Inc. (SDF),

---

[1]Disposition of the Motion was delayed pending resolution of any issue preclusion or collateral estoppel issues which may have arisen as a result of the Louisiana state court's June 18, 2008 entry of judgment on McZeal's state court breach of contract action. [rec. docs. 77 and 83].  Before that analysis could be completed, McZeal appealed the undersigned's Order to District Judge Doherty. [rec. doc. 78].  Judge Doherty has now resolved plaintiff's appeal. [rec. doc. 101].  Moreover, the undersigned has determined that, with respect to plaintiff's ERISA claims, the state court judgment has no preclusive effect under either the principle of *res judicata* (claim preclusion) or under the principle of issue preclusion (collateral estoppel).  Accordingly, the instant Motion is ripe for resolution.

[2]The Motion is styled as a Motion for Judgment on the Pleadings and alternatively for Partial Summary Judgement.  However, because the Motion is supported by documents which are not part of the pleadings in this case, the Motion is construed as a Motion for Partial Summary Judgment.

John Freeman (Freeman), Albert J. McKnight (McKnight), Howard McZeal, John Bess (Bess), and Bipin Pandya (Pandya), have filed opposition [rec. doc. 94]. The Motions have been referred to the undersigned for report and recommendation.

For the following reasons, it is recommended that the plaintiff's Motions for Partial Summary Judgment [rec. docs. 74 and 84] be **DENIED**. Furthermore, the undersigned has, *sua sponte*, analyzed the claims brought by McZeal under ERISA. After a thorough review, the undersigned concludes that McZeal has failed to state a claim for which relief can be granted, and it is further recommended that all of plaintiff's claims under ERISA for breach of fiduciary duties, his request for declaratory judgment and equitable relief under ERISA, as well as plaintiff's negligence and all other claims asserted under Louisiana state law be **DISMISSED WITH PREJUDICE.**[3]

## ALLEGATIONS OF COMPLAINT

In his Complaint, McZeal sets forth federal causes of action under ERISA and RICO and claims for negligence under Louisiana state law. [rec. doc. 1].

With respect to his ERISA claims, plaintiff names SCC as the plan sponsor, administrator, investment fiduciary and "named fiduciary." [rec. doc. 1, ¶ 12]. Plaintiff also names Peoples and SDF as a plan co-sponsors, co-administrators, co-investment fiduciaries and "named" fiduciaries. [*Id*. at ¶ 13 and 14].

---

[3]Since plaintiff was not notified of this pending analysis, the plaintiff is directed to address all argument on these issues to the District Judge in his objections to this Report and Recommendation.

Freeman (the alleged president, chief executive officer and director of SCC, Peoples and/or SDF) is named as a "fiduciary of the plan." [*Id*. at ¶ 15]. McKnight (the alleged CEO of SDF and past CEO of SCC), Howard McZeal (the alleged chief financial officer of SCC and Peoples), Bess (alleged SCC and Peoples board member and/or past board member of SCC) and Pandya (alleged investor, "debenture holder" and "quasi-board member" of SCC and Peoples and/or past board member of SCC) are named as "agent[s]" for the other defendants. [*Id*. at ¶ 16 and 17, 18 and 19].

Freeman, McKnight, Bess, Pandya and Howard McZeal are also referred to in the complaint collectively as the "officer defendants" and "director defendants." [*Id.* at ¶ 30]. Contrary to his allegations regarding SCC set forth above, plaintiff alleges that because SCC did not appoint individuals to carry out the duties of plan administrator or investment fiduciary, these duties "fell upon both SCC and its officers including the officer defendants" and further, that "SCC's directors, including the director defendants owed a fiduciary duty to monitor the performance by the plan fiduciaries of their fiduciary duties." [*Id.* at ¶ 38].

Alternatively, plaintiff alleges that if SCC did appoint individuals to carry out the duties of the plan administrator or investment fiduciary, "SCC's officers and SCC's directors, including the officer defendants and the director defendants, had a fiduciary duty with respect to the selection of such individuals and the monitoring of the performance by such individuals of their duties . . ." [*Id*. at 39]. Plaintiff further alleges that SCC and the officer defendants "were plan fiduciaries, responsible for the investment

of plan assets . . . ." [*Id*. at ¶ 48].

With respect to each individual defendant, plaintiff alleges causes of action against Freeman including claims for "breach of fiduciary duty, ERISA negligence" and "negligence." [*Id*. at ¶ 83].  With respect to McKnight, Howard McZeal, Bess, and Panya plaintiff alleges causes of action including claims for "ERISA negligence" and "negligence." [*Id*. at ¶ 85, 87, 89, 91].

In his First claim for relief, McZeal sues under § 1132(a)(2) and (3), alleging that the "fiduciary defendants" breached their fiduciary duty set forth in § 1104(a)(1) to use care, skill, prudence and diligence by failing to prudently invest the plan's assets, and more specifically, by investing in People's allegedly fraudulent stock, causing the plan to suffer a loss.  As a result of their alleged breach, McZeal claims that these defendants were unjustly enriched and, accordingly, under § 1109, are "personally liable to make good to the plan any losses to the plan . . . and to restore to the plan any profits the fiduciary made through use of the plan's assets", that they are  "liable to disgorge such profits" made by them and that the plan is further entitled to a constructive trust on these amounts.  [*Id*. at ¶ 93-99].

In his Second claim for relief, citing § 1104(a)(1) and § 1109, McZeal sues under § 1132(a)(2) and (3), alleging that the officer and director defendants breached their fiduciary duty to monitor the plan to ensure that each plan investment was "suitable", and more specifically, to monitor the plan's investment in People's stock, causing the loss of

4

"millions of dollars".  McZeal further alleges that each fiduciary defendant, who knowingly concealed the breach of another fiduciary and failed to make reasonable efforts to remedy the breach, is liable as a co-fiduciary under § 1105. [*Id*. at ¶ 100-108].

In his Third claim for relief, again citing § 1104(a)(1) and § 1109, McZeal sues under § 1132(a)(2) and (3), alleging that SCC and the officer defendants breached their fiduciary duty to plan participants by making "material misrepresentations" and by failing to provide complete and accurate information regarding the "soundness" of SCC stock, the "prudence" of investing in WorldCom stock, and causing participants to "maintain substantial investments of their plan account" in People's stock, which resulted in a reduction in the value of the plan.  McZeal further alleges that each fiduciary defendant who knowingly concealed the breach of another fiduciary and failed to make reasonable efforts to remedy the breach, is liable as a co-fiduciary under § 1105.  As a result of their alleged breach, McZeal claims that these defendants were unjustly enriched and, accordingly, the plan is entitled equitable restitution and a constructive trust on these amounts. [*Id*. at ¶ 108-115].

In his Fourth claim for relief, citing § 1104(a)(1) and § 1109, McZeal sues under § 1132(a)(2) and (3), alleging that the officer and director defendants breached their duty of loyalty to the to plan participants by failing to avoid conflicts of interest, and, more specifically, "by continuing to allow company stock as a plan investment . . . by continuing to participate in various company scandals and programs that created a

substantial personal interest in certain defendants to maintain a high public price for People's . . . stock" by "failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the plans investments", causing the loss of "millions of dollars." McZeal further alleges that each fiduciary defendant, who knowingly concealed the breach of another fiduciary and failed to make reasonable efforts to remedy the breach, is liable as a co-fiduciary under § 1105. As a result of their alleged breach, McZeal claims that these defendants were unjustly enriched at the expense of the plan and, accordingly, that the plan is entitled to equitable restitution and a constructive trust on these amounts. [*Id*. at ¶ 116-118].

In light of the above, although unclear in the pleadings and in the instant Motion, the undersigned assumes, for purposes of the instant Motion, that the alleged ERISA "fiduciary defendants" against whom summary judgment is sought are SCC, SDF, Peoples, Freeman, McKnight, Howard McZeal, Bess, and Panya.

In his Fifth claim for relief, McZeal asserts a negligence claim under Louisiana state law against SCC and presumably SDF in their alleged role as "auditor" for the plan, for failing to exercise the degree of skill normally exercised by accountants performing auditing services for the plan. [*Id*. at ¶ 119-122].

McZeal alleges that "the relief requested in this action is for the benefit of the plan." [*Id*. at ¶ 31]. Consistent with this allegation, in his prayer, McZeal prays for various forms of relief including an order compelling the fiduciary defendants to make

good to the plan all losses resulting from their alleged breaches and requiring them to restore to the plan all profits they made through use of the plan's assets, the imposition of a constructive trust on any amounts by which any defendant was unjustly enriched as a result of the breach of a fiduciary duty, an order requiring equitable restitution to the plan and "other appropriate equitable monetary relief", other equitable relief including the removal of the defendants from positions of trust and appointment of independent fiduciaries to administer the plan, and an award of damages against SCC and the other named defendants for negligence. [*Id*. at ¶ 135(C), (D), (E), (F), and (G)].[4]

## **LAW AND ANALYSIS**

### **Summary Judgment Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[I]f the moving party fails to establish by its summary judgment evidence that it is entitled to judgment as a matter of law, summary judgment must be denied – even if the non-movant has not responded to the motion." *McDaniel v. Southwestern Bell*

---

[4]Because McZeal's complaint is an enforcement action brought solely under § 1132(a)(2) and (3), and not as an action under § 1132(a)(1)(B) to recover benefits owed under the terms of his plan or for clarification of his rights to future benefits, the undersigned need not address jurisprudence holding that actions under subsection (a)(3) are barred when simultaneously brought with actions under subsection (a)(1)(B). *See Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 n. 5 (5th Cir.2003); *Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh, PA,* 215 F.3d 516, 526 (5th Cir.2000); *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir.1999); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir.1998). Furthermore, this construction is reasonable, given that McZeal has obtained a Louisiana state court judgment for breach of contract against SCC awarding him all past due and future benefits due him under the plan.

*Telephone*, 979 F.2d 1534 (5th Cir. 1992) *citing John v. Louisiana (Bd. of Trustees)*, 757 F.2d 698, 708 (5th Cir. 1985) (noting that "[t]he moving party still has the initial burden, under Rule 56(c), of showing the absence of a genuine issue concerning any material fact, <u>and</u> of showing that judgment is warranted as a matter of law.") (emphasis added); *United States Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975) ("The moving party bears the burden of showing <u>both</u> the absence of a genuine issue as to any material fact and that judgment is warranted as a matter of law.") (emphasis added).

In this case, the undersigned concludes that McZeal did not discharge his initial burden of showing that he is entitled to judgment as a matter of law. Accordingly, the instant Motions should be denied.

## LAW AND ANALYSIS

The undersigned previously determined that the benefit arrangement set out in the contract (with attachments) between McZeal and SCC is a "plan" covered by ERISA, and, accordingly, that this court had jurisdiction to consider McZeal's ERISA claims. [rec. doc. 41]. Although the undersigned determined that the arrangement constituted a "pension benefit" or "pension plan" as those terms are defined under ERISA, the undersigned was not required to consider if the arrangement constituted any particular type of pension benefit plan. The instant Motion requires the undersigned to make that determination.

Claims one through four of McZeal's Complaint allege that the defendants violated 29 U.S.C. §§ 1104[5] and 1109.[6] [7]  Both of these sections fall under ERISA's fiduciary responsibility provisions.  In order to determine whether these claims are viable, and therefore properly capable of determination on motion for summary judgment, the undersigned must determine whether the plan covering McZeal qualifies as a  "top-hat" plan.  This determination is crucial because top-hat plans are exempt from ERISA's

_____

[5]29 U.S.C. § 1104 provides that an ERISA fiduciary must perform his duties with respect to a plan "solely in the interest of the participants and beneficiaries . . ." in accordance with a "prudent man standard of care." 29 U.S.C. § 1104(a)(1).

[6]29 U.S.C. § 1109 provides in relevant part:
       (a) Any person who is a fiduciary with respect to a plan who breaches any of the
       responsibilities, obligations, or duties imposed upon fiduciaries by this
       subchapter shall be personally liable to make good to such plan any losses to the
       plan resulting from each such breach, and to restore to such plan any profits of
       such fiduciary which have been made through use of assets of the plan by the
       fiduciary, and shall be subject to such other equitable or remedial relief as the
       court may deem appropriate, including removal of such fiduciary.

[7]ERISA allows suits by plan beneficiaries against plan fiduciaries and co-fiduciaries for breaches of fiduciary duty. 29 U.S.C. § 1109; 29 U.S.C. § 1105(a); 29 U.S.C. § 1132(a)(2). *See also Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir.1998) ("Section 1132(a)(2) allows a beneficiary to bring a standard breach of fiduciary duty suit for the benefit of the subject plan."); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 136, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).  If a fiduciary fails to meet the "prudent man" standard, he may be held personally liable for any losses to the plan that result from his breach of duty. 29 U.S.C. § 1109. In *Massachusetts Mut. Life Ins. Co. v. Russell*, the Supreme Court held that recovery under 29 U.S.C. § 1109(a) and 29 U.S.C. § 1132(a)(2) is limited solely to the benefit of the plan, not an individual beneficiary. *Cunningham v. Dun & Bradstreet, Inc.*, 105 F.3d 655, 1996 WL 762915, *1 (5th Cir. 1996) *citing Russell*, 473 U.S. at 140;  *McDonald*, 60 F.3d at 237 *citing Russell*, 473 U.S. at 140.  Thus, extracontractual compensatory or punitive damages are not recoverable.  *Russell,* 473 U.S. at 138.
       ERISA also provides a cause of action for individualized equitable relief for individual participants who allege a breach of fiduciary obligations. *Radford v. General Dynamics Corp*., 151 F.3d 396, 398 399 (5th Cir. 1998) *citing Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065 (1996); 29 U.S.C. § 1132(a)(3); *Cunningham*, 105 F.3d 655 *citing Varity*. Section 1132(a)(3)'s authorization to a plan participant to bring a civil action for "appropriate equitable relief" extends to a suit against a non-fiduciary "party in interest" to a prohibited transaction barred by § 1106.  *See Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180 (2000).  McZeal has not sued for any alleged breach  under § 1106, nor has he named any defendant in other than a fiduciary capacity.  However, to the extent that McZeal asserts such a claim, top-hat plans are exempt from operation of this provision as it, like §§  1104 and 1109, falls within ERISA's fiduciary responsibility provisions.

fiduciary responsibility provisions, including 29 U.S.C. §§ 1104 and 1109.[8] *See* 29 U.S.C.

§ 1101(a)(1) (excluding top-hat plans from ERISA's fiduciary responsibility provisions

codified at 29 U.S.C. §§ 1101-1114); *Reliable Home Health Care, Inc. v. Union Central*

*Insurance Co.*, 295 F.3d 505, 512 (5th Cir. 2002); *Holloman v. Mail-Well Corp.*, 443 F.3d

832, 842 (11th Cir. 2006); *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 443 (3rd

Cir.2001). *See also Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir.2007) *citing*

*Gallione v. Flaherty*, 70 F.3d 724, 727 (2nd Cir.1995).

Accordingly, with respect to top-hat plans, the Fifth Circuit and other Circuit

courts are in agreement that there is no cause of action for breach of fiduciary duty under

ERISA. *Reliable*, 295 F.3d at 514 and 516-517; *Goldstein*, 251 F.3d at 443; *Holloman*,

443 F.3d at 842*; Demery v. Extebank Comp. Plan*, 216 F.3d 283, 290 (2nd Cir. 2000)

(affirming the lower court's dismissal of plaintiff's breach of fiduciary duty claims to the

extent that they were based on ERISA because the plan qualified as a top-hat plan);

*Duggan v. Hobbs*, 99 F.3d 307, 313 (9th Cir. 1996) (same); *Garratt v. Knowles*, 245 F.3d

941, 949 (7th Cir. 2001) ("Garratt had suggested that despite preemption of his state law

claims, ERISA would permit his suit against the defendants for breach of fiduciary duty.

However, since a top hat plan is exempt from ERISA's fiduciary rules, Garratt would

have no basis to bring such a claim."); *Paneccasio v. Unisource Worldwide, Inc.*, 532

---

[8]The undersigned also notes that top-hat plans are exempt from ERISA's provisions on participation, vesting and funding. *See* 29 U.S.C. § 1051(2) (excluding top-hat plans from ERISA's participation and vesting provisions codified at 29 U.S.C. §§ 1051-1061); 29 U.S.C. § 1081(a)(3) (excluding top-hat plans from ERISA's funding provisions codified at 29 U.S.C. §§ 1081-1086).

F.3d 101, 108 (2nd Cir. 2008) (noting that top hat plans are exempt from the fiduciary responsibility requirements finding that "to the extent Paneccassio's ERISA claim relies on an assertion of breach of fiduciary duty, it was properly dismissed.") .

For the following reasons, the undersigned finds that McZeal's plan qualifies as a top-hat plan. Therefore, his motion for summary judgment on his breach of fiduciary duty claims asserted under ERISA should be denied, and his claims under 29 U.S.C. §§ 1104, 1105 and 1109 should be dismissed because these sections do not apply to top-hat plans.

A top-hat plan is defined in ERISA as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). Thus, in order to establish whether a plan qualifies as a top-hat plan exempt from ERISA's fiduciary responsibility provisions, the Fifth Circuit has instructed that the plan "must be (1) unfunded and (2) maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *Reliable*, 295 F.3d at 512.

**The "Unfunded" Requirement**

ERISA does not define what makes a plan funded or unfunded for determining qualification as a top hat plan. However, in *Reliable*, the Fifth Circuit addressed whether a plan is "funded" for purposes of exemption from ERISA's fiduciary provisions. Relying

on opinions from the Second and Eighth Circuits, as well as a Department of Labor Advisory Opinion, the court found that courts must "look to the surrounding facts and circumstances, including the status of the plan under non-ERISA law" and also "identify whether a policy is funded by a res separate from the general assets of the company." *Reliable*, 295 F.3d at 514.

In so finding, the *Reliable* court noted that the Second Circuit had previously held that a plan was unfunded in a situation where the benefits were paid "solely from the general assets of the employer." *Reliable,* 295 F.3d at 513 *quoting Demery*, 216 F.3d at 287 *quoting Gallione*, 70 F.3d at 725. The court also favorably cited the standard adopted by the Second Circuit, originally set forth in *Miller v. Heller*, 915 F.Supp. 651 (S.D.N.Y.1996), that is, whether the beneficiary could "'establish, through the plan documents, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation.'" *Id. quoting Demery*, 216 F.3d at 287 *quoting Miller,* 915 F.Supp. at 660.

The *Reliable* court also noted that the Eighth Circuit had previously found that "[f]unding implies the existence of a res separate from the ordinary assets of the corporation . . ." and, accordingly, distinguished unfunded from funded plans "when they are paid from the employer's general assets . . . with no separate res." *Id. quoting Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1214 (8th Cir.1981) and *Belsky v.*

*First National Life Insurance Co.*, 818 F.2d 661, 663 (8th Cir.1987).

The *Reliable* court additionally cited a Department of Labor ("DOL") advisory opinion that "any determination of the 'unfunded' status of an 'excess benefit' or 'top hat' plan of deferred compensation requires an examination of the surrounding facts and circumstances", as well the tax consequences of such plans, noting that a plan is more likely to be regarded as unfunded if the beneficiaries under the plan do not incur tax liability during the year that the contributions to the plan are made. *Id.* at 513-514 *quoting* Op. Dep't Labor 92-13 A (May 19, 1992) and *Miller*, 915 F.Supp. at 659.

McZeal's plan is unquestionably unfunded. According to the plan, McZeal's benefits were to be paid from the general corporate assets of SCC[9]; there were no assets or separate *res* set aside for, allocated to, or procured by, SCC to fund the plan or to serve as a source of security for the payments to be made thereunder. [affidavits of John Freeman, rec. doc. 36-2, ¶ 4 and 5; 95-2, ¶ 8, 10-12]. Indeed, McZeal's benefits were paid out of the general corporate assets from his retirement in 1995 until December 2004 when SCC ran into financial difficulties and stopped making the payments to McZeal. [affidavit of John Freeman, rec. doc. 95-2, ¶ 9; affidavit of McZeal, rec. doc. 84-2, ¶ 12].

As such, McZeal has no legal right any greater than that of an unsecured creditor to a specific set of funds from which SCC is, under the terms of the plan, obligated to pay

---

[9] The source of financing for the plan is also expressly set forth in the attachments to the contract as follows: "Cost of Plan ...The entire cost of the benefits under the agreement plan is paid by the company (Southern Consumers Cooperative)." [rec. doc. 36-2, pg. 4].

him. Moreover, there is no evidence in the record suggesting that McZeal incurred tax liability in conjunction with the plan, during any of the years that the plan was in existence prior to the time that payments were initially made thereunder, that is, from 1991 when the plan was adopted until 1995 when McZeal retired and began receiving benefits under the plan.

**The "Deferred Compensation" Requirement**

Very few courts of appeal have had the occasion to address the meaning of "deferred compensation" in the context of a top-hat plan under ERISA. However, the Court finds one particular case from the Ninth Circuit instructive, *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996). In *Duggan,* the plaintiff, Duggan, who had been employed by Chemworld for eight years, was Chemworld's top salesman, as well as the only employee to ever have received retirement benefits from the company. *Duggan*, 99 F.3d at 309. Prior to his retirement, Duggan entered into an agreement wherein the company agreed to pay him retirement benefits of $1,056.88 per month for life. *Id*. According to the agreement, these benefits were to be paid to Duggan, in part, in consideration for his years of loyal service. *Id.* These payments were made for nine years, until Chemworld was no longer financially able to pay these benefits. *Id.*

In finding that the plan provided "deferred compensation", the Ninth Circuit found as follows:

> The payments due to Duggan under the Agreement are deferred
> compensation because they provide compensation for services substantially

14

after the services were rendered. According to the Agreement, the . . .
payments were partially "in consideration for [Duggan's] years of dedicated
service [and] loyalty to the company." Chemworld was providing Duggan
deferred compensation (monthly payments for life) for his past services and
loyalty.

*Id*. at 311.

The court additionally found that "[t]he fact that Duggan and Chemworld entered
into the Agreement after Duggan had already provided some of the services for which he
was being compensated does not change our view that the Agreement provides for
deferred compensation. The compensation was deferred because Duggan did not receive
it until well after he rendered most of the services for which he was being compensated."

*Id*.

In further support of its position, the court cited a leading treatise as follows,

Deferred compensation arrangements are generally established either before
or at the time of the performance of service to which the compensation
relates. Certain arrangements, especially those that provide supplemental
retirement income benefits, can be adopted after the service has been
rendered.

*Id. quoting* Andrew J. Lawlor and Jeffrey Perlmuter, "Nonqualified Deferred
Compensation for Key Executives," in Employee Benefits Handbook, § 14.01 (Jeffrey D.
Mamorsky ed., 3rd ed. 1991) (emphasis added).

Finally, the court found that Department of Treasury regulations promulgated
under the Internal Revenue Code were consistent with this view. Those regulations
indicate that compensation is deferred when it is received by the employee significantly
after the services are rendered, and, accordingly, a plan defers the receipt of compensation

"to the extent it is one under which an employee receives compensation or benefits more than a brief period of time after the end of the employer's taxable year in which the services creating the right to such compensation or benefits are performed." *Id.* at 311-312 *citing* Temporary Treasury Regulation Section 1.404(b)-1T, 26 C.F.R. § 1.404(a)-(1).

The court finds *Duggan* persuasive and adopts the reasoning therein. The agreement negotiated by McZeal in this case, like that in *Duggan*, provides lifetime retirement benefits to McZeal "in partial and additional consideration for his thirty four years of past service." [rec. doc. 36-2, pg. 1]. The agreement further explains that the "special retirement pension" is given to McZeal "because of his labor for employer" and "in view of all the past years in need of being compensated therefore." [*Id.*]. As was the case with substantially similar language in *Duggan*, this language leads to the conclusion that SCC was providing McZeal with "deferred compensation" for purposes of determining the existence of a top hat plan; SCC agreed to pay McZeal deferred compensation (monthly benefits for life) for his past services and loyalty to the company and McZeal, in turn, agreed to accept these deferred payments incrementally over his lifetime.[10]

---

[10]The undersigned acknowledges that an argument can be made that the "deferred compensation" requirement is not present in this case. My research has failed to disclose any Fifth Circuit case which discusses this requirement in detail. In *Reliable*, the Fifth Circuit recognized the existence of the requirement, but did not discuss what constituted "deferred compensation". Id. at 512-513.

The Third Circuit, in *In Re IT Group Inc.*, 448 F.3d 661 (3d Cir. 2006), relying on a tax treatise, David A.Cartano, *Taxation of Compensation & Benefits*, said that a deferred compensation plan "is an agreement by the employer to play pay compensation to employees at a future date. The main purpose of the plan is to defer taxes" to a time, after retirement, when the employee is in a lower tax bracket, thereby reducing his taxes. *Id.* at 664.

A review of the plan at issue here does not disclose any intent to defer McZeal's taxes. However, the

**The "Selectivity" Requirement**

"[E]mployees are part of a 'select group' under section 1101(a) (1) where the employer's retirement-plan coverage is limited to a small percentage of the employer's entire work force." *Duggan*, at 99 F.3d at 312.

On the facts of the present case, the selectivity requirement is clearly met. The "special retirement pension" was not offered to any other employee; rather, the sole employee covered under the plan is McZeal. [rec. doc. 36-2, pgs. 1-2; affidavit of John Freeman, rec. doc. 36-2, ¶ 3]. Furthermore, John Freeman, in his affidavit, testified that no other employee of SCC received any such contract or pay. [rec. doc. 36-2, ¶ 3]. Moreover, it is beyond dispute that McZeal served as general manager and/or chief executive officer of SCC from approximately 1960 until his retirement in 1995. [affidavits of John Freeman, rec. doc. 36-2, ¶ 7; rec. doc. 95-2, ¶ 6 and 13]. The affidavit testimony of Mr. Freeman, and the plain language of the plan, constitute sufficient evidence supporting the selective nature of the plan. [Id.; rec. doc. 36-2, pgs 1-8]. The plan was offered to a sole employee who occupied the company's top managerial position.

"But the 'select group' requirement includes more than a mere statistical analysis." *Duggan*, 99 F.3d at 312. The Department of Labor has explained that the special top-hat

---

court's decision in *IT Group Inc.*, does not foreclose the analysis undertaken, nor the result reached, by the Ninth Circuit in *Duggan*.

The facts in this case are much closer to the facts in *Duggan* and, therefore, the undersigned finds the reasoning in *Duggan* persuasive. The undersigned acknowledges, however, that the issue is a close one.

regime was intended to apply to employees who "by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan . . ." *Id.* at 312 citing DOL Op. Letter 90-14A. "Ability to negotiate is an important component of top hat plans . . . ." *Demery*, 216 F.3d at 289. Indeed, "top hat plans have been exempted from ERISA's substantive requirements 'because Congress deemed top-level management, unlike most employees, to be capable of protecting their own pension expectations.' " *Id. quoting Gallione*, 70 F.3d at 727.

The record clearly establishes McZeal's ability to affect and substantially influence the design and operation of his plan. Not only did McZeal negotiate the original terms of the agreement and personally sign it, when a dispute arose as to the "proper interpretation and application of some of the terms, clauses and paragraphs" of the plan, the parties renegotiated the terms of the plan and entered into an "Addendum to Contract." [rec. doc. 36-2, pg. 1-8]. In this Addendum, the parties agreed to a more specific plan formula whereby McZeal and his wife's benefits would be calculated, as well as the exact amount of "monthly installments" each would receive. [rec. doc. 36-2, pg. 6-7]. The parties additionally agreed that McZeal could elect to provide his wife with a survivor's benefit until her death contingent on a small reduction in his benefits, that McZeal and/or his wife's monthly benefits would be subject to cost of living adjustments equal to those provided by the Social Security Administration, but only if the company was making a

profit, and that McZeal's periodic re-employment on a contract basis with SCC would not suspend payment of benefits. [*Id.* at pg. 7-8].

Thus, it is clear that McZeal's high level managerial position permitted him to negotiate the terms of his plan with SCC, thereby affecting and substantially influencing the design and operation of his plan, while protecting his own pension expectations. Given this evidence, the undersigned finds that the selectivity requirement is satisfied.

In light of the above, the undersigned finds that McZeal's plan qualifies as top-hat plan. Because McZeal's plan is a top-hat plan, ERISA's fiduciary responsibility provisions do not apply. Therefore, McZeal's claims under 29 U.S.C. § 1104, 1105 and 1109 fail as a matter of law; summary judgment may not be granted and these claims must be dismissed.[11]

**Declaratory Judgment**

To the extent that by this Motion plaintiff seeks "entry of [a] declaratory judgment declaring that the defendants have breached their fiduciary duties under ERISA" [rec. doc. 84, pg. 4], for the reasons set forth above, declaratory judgment may not be granted, and this claim must likewise be dismissed.

**Louisiana State Law Negligence Claims**

Plaintiff also seeks summary judgment on his fifth claim for relief wherein he asserts a Louisiana state law claim for negligent breach of fiduciary duty.   Although

---

[11]To the extent that plaintiff intends to bring separate claims for "ERISA negligence", this ruling is intended to dispose of all such claims.

unclear, he apparently also seeks summary judgment on Louisiana state law negligence claims against the individual fiduciary defendants for failing to administer or monitor the plan, make payments under the plan, make disclosures regarding the plan and to avoid conflicts of interest which may be adverse to the plan. Summary Judgement on these claims cannot be granted, however, because these claims are completely preempted by ERISA, and, accordingly, should be dismissed.

ERISA expressly "supersede[s] any and all State laws insofar as they may . . . relate to any employee benefit plan . . ." 29 U.S.C. § 1144(a); *Reliable*, 295 F.3d at 515. This provision is "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) *quoting Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).[12] Because of this expansiveness, the Supreme Court has given "the phrase 'relate to' . . . its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (some internal quotations and citation omitted). Thus, "a state law may 'relate to'

---

[12]In *Alessi*, the Supreme Court observed that "[t]he only relevant state laws, or portions thereof, that survive this pre-emption provision are those relating to plans that are themselves exempted from ERISA's scope." *Paneccassio*, 532 F.3d at 113 *citing Alessi*, 451 U.S. at 523 n. 20, 101 S.Ct. 1895. Preemption thus applies to every plan covered by ERISA, which necessarily includes top-hat plans. *Id*.

a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129-30, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). Furthermore, even where a state law "relates to" an ERISA plan, but would provide relief unavailable under ERISA's civil enforcement provisions, ERISA preemption applies. *See Ingersoll-Rand Co.,* 498 U.S. at 144-145; *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 678 (3d Cir.2000).

As to state common law claims, ERISA preempts those that "do not attempt to remedy any violation of a legal duty independent of ERISA." *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 214, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (ERISA preempts claims that "purport [ ] to provide a remedy for the violation of a right expressly gguaranteed by [ERISA]"). Thus, to determine whether a state law claim "relates to" an ERISA top-hat plan, the Fifth Circuit has directed courts to consider whether "the underlying conduct . . . [can] be divorced from its connection to the employee benefit plan." *Reliable*, 295 F.3d at 515-516 *citing Hook v. Morrison Milling Co.*, 38 F.3d 776, 783 (5th Cir. 1994) *quoting Christopher v. Mobil Oil Corporation*, 950 F.2d 1209, 1220 (5th Cir.1992).

McZeal's allegations of negligent conduct in this case cannot be divorced from its connection to the plan and are therefore preempted. Clearly, plaintiff's state law claims all derive from his participation in the plan. Indeed, plaintiff's state law causes of action are crafted as an alternative means to recover for breaches of duties applicable solely because of the existence of an ERISA plan. In other words, in the absence of an ERISA plan, none of these alleged duties would be owed either to the plan or to plaintiff. To the contrary, the defendant's potential liability derives entirely from duties and obligations imposed under ERISA for ERISA regulated plans.

Moreover, although ERISA exempts these responsibilities from its requirements for top-hat plan administrators and fiduciaries, McZeal is nevertheless not entitled to bring state law causes of action for these same breaches. To the contrary, it is *because* ERISA exempts top-hat administrators from fiduciary duties imposed on other plan administrators and fiduciaries that plaintiff cannot maintain a state law cause of action for negligence or negligent breach of fiduciary duty. *See Goldstein*, 251 F.3d at 443 ("a top-hat plan administrator has no fiduciary responsibilities " and accordingly, is not bound by fiduciary standards); *Paneccasio,* 532 F.3d at 113-114; *Demery*, 216 F.3d at 290; *Duggan*, 99 F.3d at 313-314. For this reason, courts routinely find such claims completely preempted. *See Foley v. American Electric Power,* 425 F.Supp.2d 863, 868-869 (S.D. Ohio 2006) (dismissing as preempted state law conversion, constructive trust and breach of fiduciary duty claims because all claims stemmed from the plaintiff's

participation in an ERISA top-hat plan); *Starr v. MGM Mirage*, 2006 WL 3290299, *3 (D.Nev. 2006) (dismissing as preempted plaintiff's state law claims for breach of fiduciary duty, fraud, oppression and malice relating to a top-hat plan); *Straney v. General Motors Corp.*, 2007 WL 3346149, *10 (E.D. Mich 2007), *vacated on other grounds in part on rehearing by*, 2008 WL 162554(E.D. Mich. 2008) (dismissing as preempted state law claims for breach of contract, fraud and innocent representation in a suit involving a top-hat plan) *Lawson v. Nationwide Mut. Ins. Co.*, 2005 WL 1533102, *6-7 (E.D.Pa. 2005) (dismissing as preempted state law breach of contract, unjust enrichment and breach of fiduciary duty claims asserted in connection with a top-hat plan); *Boulet v. Fluor Corp.*, 2005 WL 2860993, *12 (S.D. Tex. 2005) (dismissing as preempted state law claims of breach of contract, breach of fiduciary duty and claims for disgorgement of profits in suit involving a top-hat plan); *Moore v. Raytheon Corp.*, 314 F.Supp.2d 658, 663-664 (N.D. Tex. 2004) (dismissing as preempted all state law claims that related to a top-hat plan)

ERISA's sweeping preemptive scope mandates this result. 29 U.S.C. § 1144(a). Had Congress envisioned a cause of action for negligence or negligent breach of fiduciary duty against top-hat plan administrators or fiduciaries, the ERISA statute would provide for such a claim. *Great-West Life & Annuity Inc. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (noting that "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply

forgot to incorporate expressly.") (internal quotations omitted).  This Congress did not do.

Accordingly, summary judgment on plaintiff's fifth claim for relief and all other purported claims for relief asserted under Louisiana state law cannot be granted[13];  these claims are completely preempted by ERISA and should therefore be dismissed.

**Equitable Relief under § 1132(a)(3)** [14]

Further, even if McZeal could maintain an action for breach of fiduciary duty, the equitable relief sought under § 1132(a)(3) is not available in this case.  Accordingly, summary judgement cannot be granted as a matter of law, and these claims should be dismissed.

The available remedies under subsection (a)(3) are limited to "appropriate equitable relief."  *Varity*, 516 U.S. at 515.  In *Mertens*, the Supreme Court held that the phrase "other appropriate equitable relief" in this section refers to remedies "typically available in equity", but not to compensatory or punitive damages. *Cunningham*, 105 F.3d 655 at *1 *citing Mertens;  Amschwand v. Spherion Corp*., 505 F.3d 342, 345 (5th Cir. 2007) *citing Mertens,* 508 U.S. at 256; *Great West v. Knudson,* 534 U.S. 204, 209-210, 122 S.Ct. 708 (2002).   In equity, "a plaintiff could seek restitution . . ., ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as

---

[13]McZeal's pleadings are voluminous and somewhat confusing; this ruling is intended to dispose of all plaintiff's state law claims.

[14]29 U.S.C. § 1132(a)(3) authorizes "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

belonging in good conscience to the plaintiff could be clearly traced to particular funds or property in the defendant's possession." *Great West*, 534 U.S. at 213. "A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. *Great West*, 534 U.S. at 213-214 *quoting* Restatement of Restitution, § 215, Comment a, p. 867 (1936).

Thus, for "appropriate equitable relief" under § 1132(a)(3), to wit, the imposition of a constructive trust or an equitable lien, the plaintiff must seek to restore money or property " identified as belonging in good conscience to the plaintiff" which can be clearly traced to "particular funds or property in the defendant's possession." *Great West*, 534 U.S. at 213; *See also Amschwand*, 515 F.3d at 347.

The possession requirement was not met in *Great West*, because "the funds to which petitioners claim[ed] an entitlement" were not in the defendant's possession. *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 362, 126 S.Ct. 1869 (2006) *citing Great West*, 534 U.S. at 207; *Pan-American Life Ins. v. Bergeron*, 82 Fed.Appx. 388, 391 (5th Cir. 2003) (affirming dismissal of a § 1132(a)(3) action because "there existed no 'money or property identified as belonging in good conscience to [the plaintiff] which is clearly traceable to particular funds in [the defendant's] possession.'").

Here, plaintiff cannot demonstrate any money or property belonging in good conscience to the plan (or himself) which can be clearly traced to "particular funds or

property in [any of ] the defendant's possession" entitling the plan (or McZeal) to a constructive trust or equitable lien.  As previously stated, top-hat plans, such as McZeal's, are unfunded.  Therefore, they have no assets separate from the general corporate assets to which McZeal or the plan may claim entitlement. The "true owner" of the assets, in the eyes of equity, are the corporation, SCC, not McZeal or McZeal's plan.  As such, Summary Judgment on any such claim therefore cannot be granted as a matter of law.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the plaintiff's Motions for Partial Summary Judgment [rec. docs. 74 and 84] be **DENIED**.  **IT IS FURTHER RECOMMENDED** that all of plaintiff's claims under ERISA for breach of fiduciary duties, his request for declaratory judgment and equitable relief under ERISA, as well as plaintiff's negligence  and all other claims asserted under Louisiana state law be **DISMISSED WITH PREJUDICE.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association*, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed March 20, 2009, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE